DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Leanne Peters, appeals her conviction out of the Wayne County Municipal Court. This Court affirms.
 I. {¶ 2} On November 26, 2007, Peters was cited for operating a vehicle under the influence of a drug of abuse in violation of R.C. 4511.19(A)(1)(a), failure to wear a safety belt in violation of R.C. 4513.263(B)(1), and a marked lane violation in violation of R.C. 4511.33. Peters pled not guilty, and the matter proceeded to a bench trial. At the conclusion of trial, the judge found Peters guilty of all three charges and sentenced her accordingly. Peters moved to stay her sentence pending appeal. The trial court granted the stay. Peters timely appealed, raising two assignments of error for review. This Court rearranges the assignments of error to facilitate discussion. *Page 2 
 II. ASSIGNMENT OF ERROR II "THE TRIAL COURT'S FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} Peters argues that her conviction for operating a vehicle under the influence of a drug of abuse was against the manifest weight of the evidence. This Court disagrees.
 "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, paragraph one of the syllabus.
This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. Id. at 339.
 {¶ 4} Peters was convicted of driving while under the influence of a drug of abuse in violation of R.C. 4511.19(A)(1)(a), which states:
 "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 5} This Court has addressed the type of evidence required to support a conviction pursuant to R.C. 4511.19(A)(1).
 "[I]n DUI prosecutions, the state is not required to establish that a defendant was actually impaired while driving, but rather, need only show an impaired driving ability. State v. Zentner, 9th Dist. No. 02CA0040, 2003-Ohio-2352, at ¶ 19, citing State v. Holland (Dec. 17, 1999), 11th Dist. No. 98-P-0066. `To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired.' Holland, [supra], citing State v. Richards (Oct. 15, 1999), 11th Dist. No. 98-P-0069[]. Furthermore, `[virtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated.' Zentner at ¶ 19, quoting State v. DeLong, 5th Dist. No. 02CA35, 2002-Ohio-5289, at ¶ 60." State v. Slone, *Page 3 
9th Dist. No. 04CA0103-M, 2005-Ohio-3325, at ¶ 9; see, also, State v. Standen, 9th Dist. No. 05CA008813, 2006-Ohio-3344, at ¶ 18.
 {¶ 6} "A driver of a motor vehicle is considered `under the influence' of alcohol when his `physical and mental ability to act and react are altered from the normal because of the consumption of alcohol.'"State v. Stephenson, 4th Dist. No. 05CA30, 2006-Ohio-2563, at ¶ 21, quoting State v. Carter (June 16, 1998), 4th Dist. No. 97CA13. TheStephenson court stated that, while the reasoning in the Carter case was applicable to the issue of being under the influence of alcohol, "we believe that the reasoning is equally applicable to the issue of being under the influence of a drug of abuse." Stephenson at ¶ 21. This Court has determined that physiological factors, such as blood shot eyes and mumbled speech, constitute evidence of a defendant's impairment which overcomes a manifest weight challenge and supports a conviction for operating a vehicle under the influence of a drug of abuse. State v.Strebler, 9th Dist. No. 23003, 2006-Ohio-5711, at ¶ 19.
 {¶ 7} At trial, Trooper Matt Mossor of the Ohio State Highway Patrol, Wooster Post, testified that he was working in uniform in a patrol car on November 26, 2007, when he noticed a vehicle weaving "pretty extensively." He testified that the vehicle crossed over the right-hand fog line four separate times. The trooper then made a traffic stop of the vehicle.
 {¶ 8} Trooper Mossor testified that Peters identified herself after he stopped her vehicle. He testified that he did not detect any odor of alcohol, but he noticed that Peters' eyes were bloodshot and glassy. He testified that her speech was "real slow, drawn out." He further testified that Peters had a difficult time looking for the items he requested from her and that her manual dexterity was "horrible." The trooper testified that, based on those observations, he believed that Peters was "under the influence." *Page 4 
 {¶ 9} Trooper Mossor testified that Peters denied that she had been drinking, although she admitted to taking Methadone at a rehabilitation center. The trooper testified that he then asked Peters to exit her vehicle and submit to field sobriety tests. Trooper Mossor testified that he began administering the horizontal gaze nystagmus test but that he had to discontinue it because Peters "had like a blank stare and couldn't follow the pen[.]" He testified that he then administered the one-leg stand test. Trooper Mossor testified that Peters swayed, used her arms to balance herself, hopped and stepped to the side, and repeatedly put her foot down. Finally, he testified that he administered the walk and turn test. He testified that Peters again had to use her arms to help balance herself and that she took more steps than he had directed her to take. He concluded, based on Peters' course of driving, speech, actions and field sobriety test results, that she was too impaired to drive.
 {¶ 10} Trooper Mossor testified that he then arrested Peters. After she was booked, she submitted a urine sample for testing. The trooper testified that Peters tested positive for the following: Methadone (30,609 nanograms), Temazepam (276.63 nanograms), Oxazepam (1372.64 nanograms), and Alpha-Hydroxyalprazolam (1726.81 nanograms). He testified that he thought all four of those drugs are drugs of abuse.
 {¶ 11} R.C. 3719.011(A) defines "drug of abuse," in part, as "any controlled substance as defined in section 3719.01 of the Revised Code[.]" R.C. 3719.01(C) defines "controlled substance" as "a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V." R.C. 3719.41 delineates the schedule drugs, and classifies Methadone as a Schedule II controlled substance and Temazepam and Oxazepam as Schedule IV controlled substances. Accordingly, the substances for which Peters tested positively constitute drugs of abuse. *Page 5 
 {¶ 12} Peters presented no evidence at trial. Accordingly, there was no evidence that her erratic driving was caused by anything other than the drugs in her system.
 {¶ 13} A review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Peters. A thorough review of the record compels this Court to find no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Peters of operating a vehicle under the influence of a drug of abuse. The weight of the evidence supports the conclusion that Peters, by her own admission, had taken Methadone earlier on the day she was stopped. She tested positive for Methadone, a Schedule II controlled substance, as well as two Schedule IV controlled substances, all "drugs of abuse" by definition in R.C. 3719.011. Trooper Mossor noted several physiological factors, including Peters' glassy, blood shot eyes; drawn out speech; and a lack of manual dexterity, evidencing her impairment to drive. Furthermore, Peters' behavior during the different field sobriety tests indicated clues to her impairment. Accordingly, Peters' conviction for operating a vehicle under the influence of a drug of abuse is not against the manifest weight of the evidence. Peters' second assignment of error is overruled.
 ASSIGNMENT OF ERROR I "MS. PETERS DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL, IN CONTRAVENTION OF U.S. CONST. AMEND. VI AND XIV, AND OHIO CONST. ART. I, SEC. 10."
 {¶ 14} Peters argues that her trial counsel was ineffective for failing to present any defense, specifically that her erratic driving was the result of conditions other than her ingestion of drugs of abuse. This Court disagrees. *Page 6 
 {¶ 15} This Court uses a two-step process as set forth inStrickland v. Washington (1984), 466 U.S. 668, 687, to determine whether a defendant's right to the effective assistance of counsel has been violated.
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 {¶ 16} To demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.
 {¶ 17} This Court must analyze the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. The defendant must first identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. This Court must then decide whether counsel's conduct fell outside the range of professional competence. Id.
 {¶ 18} Peters bears the burden of proving that counsel's assistance was ineffective. State v. Hoehn, 9th Dist. No. 03CA0076-M,2004-Ohio-1419, at ¶ 44, citing State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 49; State v. Smith (1985), 17 Ohio St.3d 98, 100. In this regard, there is a "strong presumption [] that licensed attorneys are competent and that the challenged action is the product of a sound strategy." State v. Watson (July 30, 1997), 9th Dist. No. 18215. In addition, "debatable trial tactics do not give rise to a claim for ineffective assistance of *Page 7 
counsel." Hoehn at ¶ 45, quoting In re Simon (June 13, 2001), 9th Dist. No. 00CA0072, citing State v. Clayton (1980), 62 Ohio St.2d 45, 49. Even if this Court questions trial counsel's strategic decisions, we must defer to his judgment. Clayton, 62 Ohio St.2d at 49. The Ohio Supreme Court has stated:
 "`We deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the best of available practices in the defense field.' * * * Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client." Id., quoting State v. Lytle (1976), 48 Ohio St.2d 391, 396.
 {¶ 19} "[A] defendant is not deprived of effective assistance of counsel when counsel chooses, for strategical reasons, not to pursue every possible trial tactic." State v. Brown (1988), 38 Ohio St.3d 305,319, citing State v. Johnson (1986), 24 Ohio St.3d 87. In addition, "the end result of tactical trial decisions need not be positive in order for counsel to be considered `effective.'" State v. Awkal (1996),76 Ohio St.3d 324, 337.
 {¶ 20} Peters argues that her trial counsel was ineffective for failing to present a defense. She asserts that trial counsel could have defended by presenting evidence of other physiological conditions, such as "brain and spinal cord conditions" which might have impacted her driving. Essentially, Peters argues that counsel was ineffective for failing to put her on the stand to discuss her medical conditions or to present expert testimony regarding other causes which impacted her driving ability.
 {¶ 21} The Ohio Supreme Court has held:
 "`Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.' State v. Treesh (2001), 90 Ohio St.3d 460, 490. Moreover, `"[attorneys need not pursue every conceivable avenue; they are entitled to be selective."' State v. Murphy (2001), 91 Ohio St.3d 516, 542, quoting United States v. Davenport (C.A.7, 1993), 986 F.2d 1047, 1049." State v. Were, 118 Ohio St.3d 448, 2008-Ohio-2762, at ¶ 222. *Page 8 
 {¶ 22} In this case, Peters does not identify any expert who would have been able to present the testimony she asserts would have presented a valid defense in her case. This Court takes well the State's argument that trial counsel may not have been able to find an expert witness to testify on behalf of Peters. Although Peters talked at length at the sentencing hearing regarding her alleged physical injuries, she had no evidence to substantiate any alleged physical injuries. Furthermore, trial counsel may have had valid tactical reasons for not presenting Peters as a witness in her own defense. In any event, Peters has not demonstrated that counsel's actions fell beyond the "rubric of trial strategy." As such, this Court will not second-guess counsel's actions in this regard. Accordingly, Peters has failed to demonstrate that counsel's performance was deficient. Peters' first assignment of error is overruled.
 III. {¶ 23} Peters' assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is *Page 9 
instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. Costs taxed to Appellant.
DICKINSON, J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.) *Page 1