[Cite as *State v. Hill*, 2013-Ohio-4022.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26519 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SHAUNTAE MARIE HILL | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 04 1091 (A) |

DECISION AND JOURNAL ENTRY

Dated: September 18, 2013

CARR, Judge.

{¶1} Appellant Shauntae Hill appeals her conviction in the Summit County Court of Common Pleas. This Court affirms in part, reverses in part, and remands.

I.

{¶2} A baby girl tragically died from injuries sustained when Hill crashed her car into Lynette Hayward's car in the middle of the night after both women had been drinking. Both Hill and Hayward were prosecuted in regard to the incident and their cases were tried together.

{¶3} Hill was indicted on one count of aggravated vehicular homicide, one count of involuntary manslaughter, one count of operating a vehicle under the influence of alcohol or drugs, and one count of receiving stolen property. The trial court later dismissed the charge of receiving stolen property at the State's request. The matter proceeded to trial, at the conclusion of which the jury found Hill guilty of the remaining three counts. The trial court merged the count of involuntary manslaughter into the count of aggravated vehicular homicide and

sentenced Hill to six years in prison for the homicide and twenty-four days in jail for operating under the influence. Hill's driving privileges were suspended for life. Hill filed a timely appeal in which she raises five assignments of error for review. This Court consolidates some assignments of error to facilitate review.

II.

## ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTIONS FOR AGGRAVATED VEHICULAR HOMICIDE, INVOLUNTARY MANSLAUGHTER, AND OPERATING A VEHICLE UNDER THE INFLUENCE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶4} Hill argues that her convictions are against the manifest weight of the evidence. This Court disagrees.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, at ¶ 5. This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶5}    Hill was charged with operating a vehicle while under the influence of alcohol or drugs pursuant to R.C. 4511.19(A)(1)(a) which states: "No person shall operate any vehicle * * * if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." Hill's charge of operating a vehicle while under the influence of alcohol or drugs served as the predicate offense for her charges of both aggravated vehicular homicide and involuntary manslaughter. In this assignment of error, she challenges only the finding that she was intoxicated. Accordingly, this Court considers only that issue.

{¶6}    This Court has addressed the type of evidence required to support a conviction for driving while under the influence of alcohol or drugs pursuant to R.C. 4511.19(A)(1) as follows:

> "[I]n [OVI] prosecutions, the state is not required to establish that a defendant was actually impaired while driving, but rather, need only show an impaired driving ability. *State v. Zentner*, 9th Dist. Wayne No. 02CA0040, 2003-Ohio-2352, ¶ 19, citing *State v. Holland*, 11th Dist. Portage No. 98-P-0066, 1999 WL 1313665 (Dec. 17, 1999). '[T]o prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired.' *Holland, [supra]*, citing *State v. Richards*, 11th Dist. Portage No. 98-P-0069, 1999 WL 1580980 (Oct. 15, 1999). Furthermore, '[v]irtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated.' *Zentner* at ¶ 19, quoting *State v. DeLong*, 5th Dist. Fairfield No. 02 CA 35, 2002-Ohio-5289, ¶ 60" *State v. Sloan*, 9th Dist. Medina No. 04CA0103-M, 2005-Ohio-3325, ¶ 9; *see also State v. Standen*, 9th Dist. Lorain No. 05CA008813, 2006-Ohio-3344, ¶ 18.

*State v. Peters*, 9th Dist. Wayne No. 08CA0009, 2008-Ohio-6940, ¶ 5.

{¶7}    At approximately 4:00 a.m. on August 29, 2010, Lynette Hayward was driving with her five-month old granddaughter in a car seat on the back seat. As Hayward began to make a left turn at an intersection, Hill, who was driving at a high rate of speed, slammed into the passenger side of Hayward's car. The baby in Hayward's car died as a result of injuries sustained during the crash. Hill fled the scene on foot before the police arrived, although eye

witnesses were able to direct the police in the direction of her flight. The police found Hill on a back porch of a nearby home.

{¶8} Officer Shawn Chetto of the Akron Police Department testified that he responded to the scene of the accident within minutes. Hayward was still in the driver's seat of her car, but the other car was empty. The officer testified that a group of people soon gathered on the corner and pointed east, informing him that the driver of the other car had fled that way. After giving chase on foot for a while, he found Hill lying on her back on someone's back porch. He described her as "barely conscious; appeared to be intoxicated."

{¶9} Officer Mark Northup of the Akron Police Department testified that he responded to the scene of the accident, but finding multiple officers already there, he drove around the area looking for the multiple black females who were reported to have fled from one of the cars at the scene. The officer heard over the radio that Officer Chetto had found a suspect, so he responded to that address to assist. Officer Northup testified that Hill was sitting on a deck, in a party dress with no shoes. He testified that Hill was bleeding and appeared frantic, distraught, and very upset. Based on his training and experience, Officer Northup believed that Hill was under the influence because her speech was slurred, her eyes were bloodshot, and she was very confused, "yelling and saying things that didn't make sense[.]" He testified that he did not, however, smell an odor of alcohol around Hill. He did not perform any tests to determine whether Hill was under the influence because he did not know that she was the driver, based on her assertions that she was not; and he further assumed that the traffic division would conduct any such necessary tests. Officer Northup testified, however, that Hill's behavior, speech, and appearance were consistent with intoxication.

{¶10} Dominica Pierce, a paramedic/firefighter for the Akron Fire Department, testified that she also responded to the scene of the motor vehicle accident. She testified that Hill was already in police custody when she arrived on the scene. Ms. Pierce testified that she helped evaluate Hill after the police escorted her to the ambulance. Although she was somewhat uncooperative, Hill admitted that she had been at a club with friends and that she had been drinking alcohol. Ms. Pierce testified that she smelled alcohol on Hill's breath in the ambulance. She testified that Hill exhibited normal cognitive responses.

{¶11} Chris Logan, a firefighter/paramedic with the Akron Fire Department, testified that he helped to assess only Hayward at the scene. He testified that Hayward also admitted that she had been drinking and that she was alert and oriented. Mr. Logan disagreed with the supposition that an intoxicated person cannot be alert and cognizant because alcohol has various effects on various people. In fact, he testified that he has responded to "highly intoxicated" people who have admitted to using a lot of alcohol but who could nevertheless respond accurately to questions about time, their birthdays, and other matters.

{¶12} Officer Paul Hill of the Akron Police Department testified that he responded to the two-car accident on August 29, 2010. He testified that he left to assist Officer Chetto who ran after some people who had fled the scene. He found Hill in a backyard a few blocks away. The officer testified that Hill was yelling, screaming, and cussing, and that she was combative, belligerent, and uncooperative. He testified that she appeared to be intoxicated based on these behaviors. After two other officers got Hill under control, Officer Hill returned to the scene of the crash, where he looked in one of the cars. He found a photograph of Hill inside the car. In that same car, he saw a pair of leopard print shoes, various items of trash, and a bottle of tequila.

{¶13} Officer Garry Ivey of the Akron Police Department assisted in investigating the crash. He testified that he removed a bottle of 1800 Tequila from Hill's car. He further testified that he interviewed Hill who made a statement that she had had two shots of 1800 Tequila that night.

{¶14} Officer Linda McCain of the Akron Police Department testified that she was the first traffic unit on the scene. Although she did not speak with Hill until much later after she had been taken to the hospital, she testified generally as to indicators of intoxication based on her training and experience. Officer McCain testified that an odor of alcohol, an admission to alcohol use, bloodshot eyes, slurred speech, lack of balance, inconsistent statements, and combative or argumentative behavior are all possible indicators of intoxication. She testified that, while the effects of involvement in an accident like a head-on collision could present in a similar manner, the act of fleeing from the scene would indicate that the person was not injured in the accident. Therefore, the above-mentioned observations would again be indicative of intoxication rather than injury as a result of an accident.

{¶15} This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others. *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22.

{¶16} A thorough review of the record indicates that this is not the exceptional case where the evidence weighs heavily in favor of Hill. The weight of the evidence supports the conclusion that Hill was intoxicated while she was driving both before and at the time she drove into the side of Hayward's car. She admitted to drinking shots of 1800 Tequila, and an empty bottle of the same type of tequila was found in her car. Multiple officers and paramedics

testified that Hill appeared to be intoxicated based on multiple indicators. Accordingly, Hill's convictions are not against the manifest weight of the evidence.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF VEHICULAR MANSLAUGHTER[.]

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING THE STATE'S ACCIDENT RECONSTRUCTIONIST TO TESTIFY AS AN EXPERT.

{¶17} Hill argues that the trial court erred by failing to instruct the jury on the lesser included offense of vehicular manslaughter and by allowing the State's accident reconstructionist to testify as an expert. This Court disagrees.

{¶18} This Court has long held that "an appellate court will not consider as error any issue a party was aware of but failed to bring to the trial court's attention[]" at a time when the trial court might have corrected the error. *State v. Dent*, 9th Dist. Summit No. 20907, 2002-Ohio-4522, ¶ 6. "[F]orfeiture is a failure to preserve an objection[.] * * * [A] mere forfeiture does not extinguish a claim of plain error under Crim.R. 52(B)." (Internal citations omitted.) *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23. By failing to raise these issues below, Hill has forfeited her objections to the lack of any lesser included offense instruction and to the admission of expert testimony. *See Akron v. Concannon*, 9th Dist. Summit No. 24512, 2009-Ohio-4162, ¶ 12. Furthermore, Hill has failed to argue plain error on appeal. "[T]his Court will not construct a claim of plain error on behalf of an appellant who fails to raise such an argument in her brief." *State v. White*, 9th Dist. Summit Nos. 23955, 23959, 2008-Ohio-2432, ¶ 33. Accordingly, this Court will not consider whether these matters gave rise to plain error.

*State v. Leason*, 9th Dist. Summit No. 25566, 2011-Ohio-6591, ¶ 13. Hill's second and third assignments of error are overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING STATE'S EXHIBIT 11, WHICH WAS A PRINTOUT FROM A CRASH DATA RETRIEVAL TOOL, WITHOUT REQUIRED TESTIMONY THAT THE PROGRAM WAS RELIABLE.

{¶19} Hill argues that the trial court erred by admitting the State's exhibit 11 into evidence. This Court disagrees.

{¶20} Hill failed to object to the admission of the exhibit. Accordingly, she has forfeited any objection except on the basis of plain error. *Payne* at ¶ 23. "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Issa*, 93 Ohio St.3d 49, 56 (2001). Hill does not allege plain error except by way of a bald conclusory statement that "[i]t is plain error to allow just such an exhibit * * *." Assuming arguendo that this is sufficient to raise plain error, she does not argue, let alone demonstrate, that the outcome of the trial would have been different but for the admission of the exhibit. Hill's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO MERGE THE AGGRAVATED VEHICULAR ASSAULT (sic) AND THE OVI CONVICTIONS.

{¶21} Hill argues that the trial court erred by failing to merge her convictions for aggravated vehicular homicide and operating a vehicle while under the influence of alcohol.

{¶22} The current test for determining whether multiple offenses constitute allied offenses for sentencing purposes is set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. The *Johnson* court held that "[w]hen determining whether two offenses are allied offenses

of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id*.

{¶23} During the sentencing hearing, the trial court did not conduct an analysis pursuant to *Johnson* to determine whether aggravated vehicular homicide and operating a vehicle while under the influence were allied offenses of similar import subject to merger. This Court has consistently declined to conduct the *Johnson* analysis in the first instance. *See, e.g., State v. Ross*, 9th Dist. Summit No. 25178, 2011-Ohio-3197, ¶ 12. Accordingly, we must remand the matter to the trial court for consideration in the first instance of whether Hill's offenses are allied offenses of similar import pursuant to *Johnson, supra*. Hill's fifth assignment of error is sustained.

### III.

{¶24} Hill's first, second, third, and fourth assignments of error are overruled. Her fifth assignment of error is sustained. This judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
CONCURS.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.