[Cite as *State v. Maitland*, 2011-Ohio-6244.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

MICHAEL C. MAITLAND

    Appellant

C.A. No.    25823

APPEAL FROM JUDGMENT
ENTERED IN THE
STOW MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    2010 TRC 8504

DECISION AND JOURNAL ENTRY

Dated: December 7, 2011

DICKINSON, Judge.

INTRODUCTION

{¶1} The Twinsburg Police Department received an anonymous call about an erratic driver the caller had allegedly followed from Medina and who had just turned into a McDonald's parking lot. Officer Eric Sawyer drove to the restaurant and entered the back of the parking lot. As he drove through the lot, he saw the driver of a car in a spot at the front of the restaurant turn its lights off. The car matched the description provided by the caller. Officer Sawyer continued to the front of the restaurant and stopped his cruiser a short distance behind the car. After Officer Sawyer sat behind the car for a few seconds, the driver opened his door and got out. As the driver started to get out of the car, Officer Sawyer turned on his cruiser's light bar. Officer Sawyer got out of his cruiser, approached the driver, whom he identified as Michael Maitland,

and began talking to him. Based on the strong odor of alcoholic beverages on Mr. Maitland's breath, his slurred speech and glossy eyes, and his admission that he had pulled into the parking lot because he had had too much to drink, Officer Sawyer had him perform field sobriety tests. When Mr. Maitland was unable to perform the tests, Officer Sawyer arrested him. Mr. Maitland subsequently registered .273 in a blood-alcohol content breath test and was cited for operating a vehicle while intoxicated and operating a vehicle with a blood-alcohol content over .17. Mr. Maitland moved to suppress the evidence against him, arguing that Officer Sawyer did not have reasonable suspicion to seize him. After the municipal court denied his motion, Mr. Maitland pleaded no contest, and the municipal court found him guilty of the offenses. Mr. Maitland has appealed, assigning as error that the municipal court incorrectly denied his motion to suppress. We reverse because the anonymous tip did not provide Officer Sawyer reasonable suspicion that Mr. Maitland had engaged in criminal activity.

## STANDARD OF REVIEW

{¶2} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶8. Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*. But see *State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside*, 2003-Ohio-5372, at ¶8.

## INVESTIGATORY STOP

{¶3} Mr. Maitland's assignment of error is that the municipal court incorrectly determined that Officer Sawyer did not violate his constitutional rights. He has argued that

Officer Sawyer did not have reasonable suspicion to stop him in the McDonald's parking lot. Although a police officer generally may not seize a person within the meaning of the Fourth Amendment unless he has probable cause to arrest him for a crime, "not all seizures of the person must be justified by probable cause . . . ." *Florida v. Royer*, 460 U.S. 491, 498 (1983). "A police officer may stop a car if he has a reasonable, articulable suspicion that a person in the car is or has engaged in criminal activity." *State v. Kodman*, 9th Dist. No. 06CA0100-M, 2007-Ohio-5605, at ¶3 (citing *State v. VanScoder*, 92 Ohio App. 3d 853, 855 (1994)). "[He] must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "[I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21-22 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

{¶4}   We must first consider whether Officer Sawyer's actions constituted a seizure under the Fourth Amendment. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Florida v. Royer*, 460 U.S. 491, 497 (1983). "If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed." *Id.* at 498.

{¶5}   "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have

believed that he was not free to leave." *California v. Hodari D.*, 499 U.S. 621, 627-28 (1991) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.)). "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." *United States v. Drayton*, 536 U.S. 194, 201 (2002); see also *Florida v. Bostick*, 501 U.S. 429, 439 (1991) ("[A] court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter."). Circumstances that might indicate a seizure, even when the person had not attempted to leave, include the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554 (opinion of Stewart, J.); *Terry v. Ohio,* 392 U.S. 1, 20, n.16 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.").

{¶6}   We have reviewed the record and conclude that Officer Sawyer seized Mr. Maitland. Officer Sawyer pulled his police cruiser behind Mr. Maitland's car, close enough so that he blocked Mr. Maitland from pulling out of his parking space. Courts have generally concluded that, if an officer positions his vehicle so that a person cannot exit a parking lot without asking the officer to move, the officer has exhibited a show of authority constituting a seizure. E.g. *State v. Cookson*, 4th Dist. No. 00CA53, 2001 WL 1155710 at *4 (Sept. 25, 2001); *State v. Wallace*, 145 Ohio App. 3d 116, 122-23 (2001); *State v. Inabnitt*, 76 Ohio App. 3d 586, 589-90 (1991).

**{¶7}** The next question is whether Officer Sawyer had reasonable suspicion to conduct an investigatory stop. In this case, Officer Sawyer did not observe any suspicious activity. His only reason for stopping Mr. Maitland was a dispatch he received based on an anonymous call to the Twinsburg Police Department. "[If] an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate . . . that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." *Maumee v. Weisner*, 87 Ohio St. 3d 295, 298 (1999) (emphasis omitted).

**{¶8}** Whether a telephone tip alone can create reasonable suspicion justifying an investigative stop depends on its indicia of reliability. *Maumee v. Weisner*, 87 Ohio St. 3d 295, 299 (1999). "Factors considered 'highly relevant in determining the value of [the informant's] report' are the informant's veracity, reliability, and basis of knowledge." *Id.* (quoting *Alabama v. White*, 496 U.S. 325, 328 (1990)).

**{¶9}** "[C]ourts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant." *Maumee v. Weisner*, 87 Ohio St. 3d 295, 300 (1999). Although an "anonymous informant's tip can give rise to a reasonable suspicion of criminal activity . . . [it] is generally insufficient to support reasonable suspicion of criminal activity, because it lacks the necessary indicia of reliability." *State v. Jordan*, 104 Ohio St. 3d 21, 2004-Ohio-6085, at ¶36. "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" *Id.* (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)). "Accordingly, anonymous tips normally

require suitable corroboration demonstrating 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Id*. (quoting *J.L.*, 529 U.S. at 270).

{¶10} In this case, the State did not present any facts to suggest that the report of the anonymous caller was reliable. The fact that the caller was able to provide the description and license plate number of a car in the McDonald's parking lot is not material regarding the reliability of the caller's erratic driving accusation. See *Florida v. J.L.*, 529 U.S. 266, 272 (2000). As the United States Supreme Court explained in *J.L.*, "[a]n accurate description of a subject's readily observable location and appearance is . . . reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id*.

{¶11} We conclude that Officer Sawyer's seizure of Mr. Maitland, based solely on the tip of an anonymous caller, violated Mr. Maitland's constitutional rights. The municipal court incorrectly denied his motion to suppress. Mr. Maitland's assignment of error is sustained.

## CONCLUSION

{¶12} The anonymous caller's tip did not provide Officer Sawyer with reasonable suspicion that Mr. Maitland had engaged in criminal activity. Accordingly, Officer Sawyer was not permitted to perform an investigatory stop of Mr. Maitland in the McDonald's parking lot. The judgment of the Stow Municipal Court is reversed.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

 

CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR

APPEARANCES:

PATRICIA J. SMITH, Attorney at Law, for Appellant.

DAVID MAISTROS, Prosecuting Attorney, for Appellee.