[Cite as *State v. Clark*, 2019-Ohio-4303.]

STATE OF OHIO   )     IN THE COURT OF APPEALS
        )ss:     NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA  )

STATE OF OHIO         C.A. No.   18CA0093-M

   Appellee

   v.            APPEAL FROM JUDGMENT
               ENTERED IN THE
TIMOTHY CLARK        COURT OF COMMON PLEAS
               COUNTY OF MEDINA, OHIO
   Appellant       CASE No.  18CR0278

DECISION AND JOURNAL ENTRY

Dated: October 21, 2019

HENSAL, Judge.

**{¶1}** Timothy Dale Monte Clark appeals his conviction from the Medina County Court of Common Pleas. This Court affirms.

I.

**{¶2}** According to the victim, she began dating Mr. Clark while he was in prison for an unrelated crime. Approximately seven months later, Mr. Clark was released from prison, and they continued their relationship. After his release, Mr. Clark began living with her, and they began a sexual relationship. Within a few months, the relationship turned physically abusive. According to the victim, Mr. Clark became angry with her one evening, and struck her in the face with his closed fists. He also struck her with a broomstick, pulled her hair, and kicked her. The victim did not initially report the abuse, but took pictures of her injuries, including bruises and swelling on her face, the following day.

{¶3}   About a week later, the victim picked up her nine-year-old son from school and was stopped in traffic when Mr. Clark approached her car while on a bicycle.  He reached into her car, grabbed her cell phone from her, and told her to meet him at the apartment.  The victim immediately drove to her mother's apartment, which was directly across the street from her apartment.  The victim told her son to run in and tell her mother to call the police while she followed closely behind him.  Mr. Clark arrived shortly thereafter on his bicycle and spoke with the victim's mother and sister.  The victim's sister persuaded Mr. Clark to give her the victim's phone, which he did.  The victim's mother told Mr. Clark she was calling the police, at which point he left.

{¶4}   The police arrived shortly thereafter.  While there, the victim explained what had happened and showed them threatening text messages that Mr. Clark had sent to her that day.  In addition to the text messages, the victim allowed the police to listen to voicemails that Mr. Clark had left her that day.  In one, Mr. Clark threatened to shoot the victim in the face if she called the police.

{¶5}   The police located Mr. Clark at the public library and arrested him.  A grand jury subsequently indicted him on one count of domestic violence in violation of Revised Code Section 2919.25(A),(D)(4).  Mr. Clark waived his right to a jury and the matter proceeded to a bench trial.  At trial, Mr. Clark stipulated as to his two prior domestic-violence convictions, which are required for a conviction under Section 2919.25(D)(4), and the trial court found him guilty.  He now appeals, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE TRIAL COURT'S
FINDING OF "GUILTY" AS TO THE SOLE COUNT OF FELONY

DOMESTIC VIOLENCE, IN VIOLATION OF R.C. 2919.25(A)(D)(4), WHERE THE STATE FAILED TO PROVE THE ESSENTIAL ELEMENT THAT DEFENDANT-APPELLANT AND THE ALLEGED VICTIM WERE "FAMILY OR HOUSEHOLD MEMBERS."

{¶6} In his first assignment of error, Mr. Clark argues that his conviction for domestic violence was not supported by sufficient evidence because the State failed to establish that he and the victim were family or household members. Upon review of the record, this Court disagrees.

{¶7} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶8} As previously noted, Mr. Clark was charged and convicted under Section 2919.25(A). Relevantly, that Section provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). There was no dispute at trial that Mr. Clark was not a family member. Instead, the dispute centered upon whether he and the victim were household members. Section 2919.25(F)(1) defines "household member[,]" in relevant part, as "a person living as a spouse[.]" R.C. 2919.25(F)(1)(a)(i). It then defines a "[p]erson living as a spouse" as "a person * * * who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2). As the Ohio Supreme Court

has stated, "[t]he essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams*, 79 Ohio St.3d 459 (1997), paragraph two of the syllabus. It continued that:

> [p]ossible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations.

*Id.* at 465. The Ohio Supreme Court later clarified that the sharing of familial or financial responsibilities is not required when there is evidence that the victim and the offender lived together. *State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, ¶ 13. As this Court has stated, "[t]he burden of [production for] establishing cohabitation is not substantial." (Alteration sic.) *State v. Long*, 9th Dist. Summit No. 25249, 2011-Ohio-1050, ¶ 6, quoting *Dyke v. Price*, 2d Dist. Montgomery No. 18060, 2000 WL 1546555, *3 (Oct. 20, 2000). "[I]t is a person's determination to share some measure of life's responsibilities with another that creates cohabitation." *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, ¶ 35.

{¶9} Here, there is no dispute that the State set forth sufficient evidence regarding consortium; the victim testified that she and Mr. Clark had a sexual relationship. Mr. Clark argues, however, that the State presented insufficient evidence to establish that he cohabitated with the victim. We disagree.

{¶10} The victim testified that she and Mr. Clark had been living together since his release from prison, and that they slept in the same bedroom. She testified that he shared in household responsibilities including cooking, cleaning, and taking out the trash. She further testified that he kept a toothbrush at the apartment, as well as the clothes he came home from prison with. The victim's mother also testified that Mr. Clark lived with her daughter.

{¶11} Mr. Clark points to several facts in support of his position that he did not cohabitate with the victim, including that: (1) his name was not on the lease for the apartment; (2) they did not share a bank account; (3) he did not pay bills or contribute money toward groceries; (4) the victim's mother only saw him at her daughter's apartment one time over the course of two months; (5) the police had been unable to serve him with a no-trespass order issued by the apartment complex that stemmed from an unrelated incident; (6) he only kept a toothbrush and the clothes he was wearing that day at the apartment; and (7) the victim told one of the officers that she did not know where he was staying. While the foregoing are possible factors that a court can consider when determining the issue of cohabitation, none are required at the sufficiency stage. Instead, they relate to the weight of the evidence presented, which is legally distinct from sufficiency. *State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 11 ("A sufficiency challenge is legally distinct from a manifest weight challenge.") Viewing the evidence presented in a light most favorable to the State, including the testimony of the victim and her mother, we hold that sufficient evidence existed to establish that Mr. Clark cohabitated with the victim. Accordingly, his first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE DEFENDANT-APPELLANT'S CONVICTION OF FELONY DOMESTIC VIOLENCE IN VIOLATION OF R.C. 2919.25(A)(D)(4), WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHERE THE STATE FAILED TO PROVE THE ESSENTIAL ELEMENTS THAT DEFENDANT-APPELLANT AND THE ALLEGED VICTIM WERE "FAMILY OR HOUSEHOLD MEMBERS" OR THAT DEFENDANT-APPELLANT "CAUSED OR ATTEMPTED TO CAUSE PHYSICAL HARM" TO THE ALLEGED VICTIM.

{¶12} In his second assignment of error, Mr. Clark argues that his conviction was against the manifest weight of the evidence on the issues of cohabitation, and whether he caused

or attempted to cause physical harm to the victim. For the reasons that follow, this Court disagrees.

{¶13} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Notably, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts[,]" who is "free to believe all, part, or none of the testimony of each witness." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. "This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness testimony over the testimony of others." *State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 15.

{¶14} Initially, we note that Mr. Clark's argument as it relates to cohabitation is essentially the same argument he presented in his challenge to the sufficiency of the evidence. In this regard, he again argues that: (1) his name was not on the lease for the apartment; (2) he and the victim did not share a bank account; (3) he did not pay bills or contribute money toward groceries; (4) the victim's mother only saw him at her daughter's apartment one time over the course of two months; (5) the police had been unable to serve him with a no-trespass order issued by the apartment complex that stemmed from an unrelated incident; (6) he only kept a toothbrush and the clothes he was wearing that day at the apartment; and (7) the victim told one

of the officers that she did not know where he was staying. This Court will address each of the foregoing in turn.

{¶15} While being on the lease, sharing a bank account, paying bills, and contributing money toward groceries are possible factors a court can consider when examining the issue of cohabitation, they are not required. Here, the victim testified that Mr. Clark lived with her, that they slept in the same bedroom, and that he cooked, cleaned, and took out the trash. Additionally, while the victim's mother testified that she only saw Mr. Clark one time at the apartment, she also testified that her relationship with her daughter became more distant when she (the victim) started dating Mr. Clark. Regarding the police's inability to serve him with a no-trespass order at the apartment, the trial court heard testimony from an officer who indicated that the police often serve no-trespass orders when they "happen upon" the person, and do not necessarily stop someone just to serve that person with the order. Regarding his argument that he only kept the clothes he was wearing that day at the apartment, his counsel's questioning of the victim at trial indicated otherwise. When asked whether Mr. Clark only kept the clothes he was wearing that day at the apartment, she responded "[n]o," and clarified that he kept the clothes he came home from prison with at the apartment. Lastly, regarding his argument that the victim told an officer that she did not know where he was staying, the officer that spoke with the victim clarified the context in which that response was elicited. Specifically, he indicated that when he asked the victim where Mr. Clark was staying, he "[m]eant where [Mr. Clark] would be hiding from [the police] or where he would run to, not where he was living." In light of all of the evidence presented, we cannot say that the trial court clearly lost its way by determining that Mr. Clark cohabitated with the victim. We now turn to his argument regarding the evidence as it relates to whether he caused or attempted to cause physical harm to the victim.

**{¶16}** Mr. Clark challenges the evidence regarding whether he caused or attempted to cause physical harm to the victim by pointing out the fact that the victim did not initially report the abuse, that the victim kept in contact with him, and that the victim included new information when she submitted a second written statement to the police. These arguments relate to the credibility of the victim, who specifically testified that Mr. Clark punched her, kicked her, hit her with a broom, and pulled her hair. As previously noted, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts[,]" who is "free to believe all, part, or none of the testimony of each witness." *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus; *Jordan*, 2004-Ohio-7184, at ¶ 35. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events[.]" *State v. Pari*, 9th Dist. Summit No. 28098, 2017-Ohio-4165, ¶ 19. Accordingly, Mr. Clark's second assignment of error is overruled.

III.

**{¶17}** Mr. Clark's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ERIC D. HALL, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.